# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DAVID RAMIREZ,

    Petitioner,

v.                                             CASE NO: 8:12-cv-1216-T-23TBM

KENNETH S. TUCKER, SECRETARY,
DEPARTMENT OF CORRECTIONS,

    Respondent.
_____/

## **O R D E R**

David Ramirez timely petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his state convictions imposed pursuant to a plea of *nolo contendere*. After carefully reviewing the Petition,[1] the Response filed by the State of Florida,[2] Petitioner's Reply,[3] and the entire record, the Court concludes that the petition should be denied.

### **PRELIMINARY FACTS AND HISTORY**

When Ramirez was nineteen, he committed two counts of lewd and lascivious battery on his cousin, who was thirteen at the time. These second degree felonies were

---

    [1] *See* docket 1.

    [2] *See* docket 8.

    [3] *See* docket 13.

committed between late December 2004 and January 16, 2005.[4] While he was released on bond, he committed the third degree felonies of burglary and grand theft on September 26 and 27, 2005.[5] He also impregnated a sixteen-year-old, who gave birth to his baby prior to his sentencing in September, 2007.[6]

On July 17, 2007,[7] Ramirez entered an open plea of *nolo contendere* on all charges.[8] Before accepting the plea, the state trial court informed Ramirez of the maximum sentence of forty years in prison, which included fifteen years on each of the two counts of lewd and lascivious battery and five years each on the burglary and grand theft.[9] The court noted that Ramirez scored to a low end guidelines sentence of 15.9 years.[10] The state decided to seek the maximum.[11]

At sentencing on September 25, 2007, the court heard from seven witnesses: Ramirez' mother, two aunts, one uncle, a cousin (the victim), the mother of the girl

---

[4] *See* docket 10, Exh. 6 (Felony Information in Case No. CRC05-588CFAES filed in March 2005).

[5] *See* docket 10, Exh. 1 (Felony Information in Case No. CRC05-5250CFAES filed in November 2005).

[6] *See* docket 10, Exh. 7, p. 5.

[7] Prior to the plea hearing, Ramirez had entered a written plea of guilty to the burglary and grand theft on January 5, 2007. *See* docket 10, Exh. 2 (Plea Form in Case 5250). The judge withheld adjudication of guilt and imposed two years' probation. *See* docket 10, Exh. 3 (Judgment in Case 5250). Approximately one month later, Mr. Ramirez violated his probation by possessing and using cocaine. *See* docket 10, Exh. 4 (Warrant and Affidavit for violation of probation in Case 5250).

[8] *See* docket 10, Exh. 7, pp. 19-21.

[9] *See* docket 10, Exh. 7, pp. 13, 16-17 & 21.

[10] *See* docket 10, Exh. 7, p. 23.

[11] *See* docket 10, Exh. 7, p. 21.

Ramirez impregnated while on bond, and the detective.[12]  The state sought the maximum of thirty years on the lewd and lascivious batteries.[13]  On the motion for a downward departure, trial counsel argued (1) that Ramirez was eligible for youthful offender status, which carries no more than a six-year sentence and (2) that his mental illness warranted a downward departure.[14]  The judge imposed a sentence of fifteen years in prison on the first count of the lewd and lascivious battery and a consecutive five-year prison term followed by ten years' probation on the second count of the lewd and lascivious charge.[15]  Ramirez also received concurrent five-year prison terms on the burglary and grand theft, concurrent with the second count of the lewd and lascivious battery.[16]  The total sentence imposed was twenty years' incarceration followed by ten years' probation.[17]

On direct appeal, the public defender filed an *Anders*[18] brief, and Ramirez voluntarily dismissed the appeal.[19]  Ramirez timely filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 and raised one claim of

---

[12] *See* docket 10, Exh. 8, pp. 11-63.

[13] *See* docket 10, Exh. 8, p. 67 & 69.

[14] *See* docket 10, Exh. 8, pp. 74-75.

[15] *See* docket 10, Exh. 8, p. 79; docket 10, Exh. 9.

[16] *See* docket 10, Exh. 8, p. 80.

[17] *See* docket 10, Exh. 8, p. 80.

[18] *Anders v. California*, 386 U.S. 738 (1967).

[19] *See* docket 10, Exhs. 10, 12, 13, 14, & 15.

ineffective assistance of counsel.[20] After an evidentiary hearing,[21] the state trial court denied the motion.[22] The denial was affirmed *per curiam* without opinion by the state appellate court on May 18, 2012.[23]

## GROUND FOR FEDERAL HABEAS RELIEF

Ramirez timely raises the same ground in this proceeding as he raised in his motion for post-conviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850: his counsel was ineffective for misadvising him during the plea proceedings.[24] He claims he would have received a ten-year prison sentence, rather than twenty years in prison followed by ten years' probation, if his counsel had advised him to accept the state's offer of a ten-year sentence. According to Ramirez, his trial counsel was certain he would be sentenced as a youthful offender and receive no more than six years on all charges. Ramirez' story was supported by the affidavits and testimony of his mother, aunt, and grandmother, who were all present when his trial counsel allegedly discussed the existence of a ten-year offer and told them Ramirez should request youthful offender status and no more than six years. Ramirez asserts that trial counsel rejected the

---

[20] *See* docket 10, Exh. 16.

[21] Based on *Johnson v. State*, 757 So. 2d 586 (Fla.Dist.Ct.App. 2000), the trial court properly ordered an evidentiary hearing to determine whether trial counsel gave erroneous advice that his sentence would be much less than ten years. *See* docket 10, Exh. 20. *Johnson* stands for the proposition that a defendant's negative response to the trial court's question of whether he was promised anything to induce the plea, does not conclusively refute a claim for ineffective assistance of counsel based on erroneous advice.

[22] *See* docket 10, Exh. 22.

[23] *See* docket 10, Exh. 28.

[24] *See* docket 10, Exh. 16.

ten-year offer without permission from Ramirez.²⁵  Ramirez now seeks the ten-year sentence rather than his current sentence.

## LEGAL STANDARDS

**Standard Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)**

The AEDPA governs Ramirez' petition. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840, 121 S.Ct. 103, 148 L.Ed.2d 62 (2000).  Section 2254(d) creates a highly deferential standard which does not permit the granting of federal habeas relief with respect to a claim adjudicated on the merits in state court unless either (1) the "contrary to" or "unreasonable application" clauses of subsection (d)(1) are met or (2) the state court decision was based on "an unreasonable determination of the facts in light of the evidence presented" under subsection (d)(2).  *See Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (interpreting the deferential standard); *Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001) (explaining the standard and noting the presumption of correctness attributed to a factual issue decided by state court).  "The AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779, 130 S.Ct. 1855, 1866, 176 L.Ed.2d 678 (2010).²⁶

---

²⁵  *See* docket 10, Exh. 19.

²⁶  *See also Cullen v. Pinholster*, ___ U.S. ___ , 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (stating section 2254(d) creates "a 'difficult to meet,' and 'highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt.'") (citations

**Standard for Ineffective Assistance of Counsel**

A petition claiming ineffective assistance of counsel must meet the two-part standard for counsel's performance established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a *prima facie* claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88. Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688.

The Sixth Amendment right to effective assistance of counsel extends to plea negotiations. *Missouri v. Frye*, 566 U.S. ___, 132 S.Ct. 1399, 1404-08, 182 L.Ed.2d 379 (2012); *Lafler v. Cooper*, 566 U.S. ___, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012). The Supreme Court held in *Hill*[27] that the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *See United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (citing *Hill*). In the circumstance of challenging a plea of guilty or *nolo contendere*,[28] the inquiry is modified and the defendant "must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S.Ct. at 1384-85, citing *Frye*; *see also Hill*. To establish the prejudice prong of

---

omitted).

[27] *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

[28] "A plea of *nolo contendere* has the same legal effect in a criminal proceeding as a guilty plea." *Lockley v. McNeil*, No. 5:10-cv-64-Oc-29TBS, 2013 WL 5289609, at *4 (M.D. Fla. Sept. 19, 2013). A *nolo contendere* plea stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

*Strickland*, "a defendant must demonstrate a reasonable probability that: (1) he would have accepted a plea offer but for counsel's ineffective assistance; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it; and (3) the plea would have resulted in a lesser charge or a lower sentence." *Frank v. United States*, No. 12-13930, 2013 WL 3287178, at *2 (11th Cir. Jul. 1, 2013) (citing *Frye*, 132 S.Ct. at 1409 and *Lafler*, 132 S.Ct. at 1384-85) (unpublished opinion). If either of the two prongs – constitutionally deficient performance or prejudice – is established, it is unnecessary to address the remaining prong. *Bishop v. Warden*, GDCP, 726 F.3d 1243, 1254 (11th Cir. 2013) (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)).

## ANALYSIS

The state trial court's denial of Petitioner's claim that his counsel rendered ineffective assistance in giving him incorrect advice regarding the plea is supported by the record. Although the testimony is contradictory, the state trial court did not find Ramirez' testimony credible. The record shows that there was no firm offer of a ten-year sentence and no promise of a youthful offender sentence, which is no more than six years. The trial court made it clear that Ramirez would be entering an open plea with no offers outstanding. Based on the prejudice prong of the *Strickland* standard, the petition should be denied.

### Offers

As to any ten-year offer, the transcripts from the plea, sentencing, and post-conviction evidentiary hearings reveal that no firm offer ever existed from the state or

anyone else. At the outset of the change of plea,[29] trial counsel stated that Ramirez wanted to plead to only the violation of probation, Case No. 5250, but not to the pending lewd and lascivious battery on a child, Case No. 588, because "we haven't been able to reach any kind of a disposition."[30] The ensuing colloquy between trial counsel and the assistant state attorney confirms that no disposition had been reached:

> [Trial Counsel]: The only thing was – I mean, on the pending case [lewd and lascivious], I was looking for a cap.
>
> [State]: She's saying he can have ten years or nothing. That's it. No cap.
>
> [Trial Counsel]: Ten years or that's it. And probably going to ask for youthful offender at some point on this. Ask for a downward departure or something like that.[31]

While the identity of the "she" in the statement by the prosecution is unclear, the absence of a firm ten-year offer is apparent. After this conversation, the court stated, "[i]f he wants to plea, he can plea and I'll remand him and we'll see what happens on the other case."[32] The court made it clear that he would not agree to a departure sentence nor would he release Ramirez on bond.[33] After a brief recess for the parties to talk, trial counsel announced that Ramirez would enter a plea of no contest on both Case No. 588

---

[29] *See* docket 10, Exh. 7 ("Bond-reduction hearing/change of plea").

[30] *See* docket 10, Exh. 7, p. 3.

[31] *See* docket 10, Exh. 7, p. 6.

[32] *See* docket 10, Exh. 7, p. 6.

[33] *See* docket 10, Exh. 7, pp. 6-7.

and Case No. 5250.[34] Regarding any prior offer, the state noted that "any offer that was ever given is off the table and it's, basically, fair game."[35]

At the post-conviction evidentiary hearing, Ramirez' mother and his grandmother testified that at the recess during the plea hearing trial counsel told them that he had turned down the state's offer of ten years in prison because he was going to try to get youthful offender status.[36] Ramirez' aunt did not specifically remember the ten-year offer but remembered that trial counsel was trying to obtain for him youthful offender status that carried no more than six years.[37]

Trial counsel testified at the evidentiary hearing that he and the assistant state attorney engaged in plea negotiations, but the state attorney's office's policy was "not to make hard offers."[38] He stated that the state attorney's office intimated that they would accept a ten-year offer.[39] Prior to the plea hearing, Ramirez rejected any ten-year sentence.[40] Ramirez told trial counsel that he was not interested in going to prison for ten years but was interested in an open plea because a chance existed for youthful offender

---

[34] *See* docket 10, Exh. 7, p. 9.

[35] *See* docket 10, Exh. 7, p. 10.

[36] *See* docket 10, Exh. 21, pp. 69, 73 &76-78.

[37] *See* docket 10, Exh. 21, pp. 84-86.

[38] *See* docket 10, Exh. 21, p. 92.

[39] *See* docket 10, Exh. 21, pp. 92 & 94.

[40] *See* docket 10, Exh. 21, p. 94.

status.[41]  Trial counsel never told Ramirez, contrary to Ramirez' claim, that Ramirez had the option of accepting a ten-year sentence if the judge refused to sentence him as a youthful offender.[42]  Trial counsel denied promising Ramirez that Ramirez would receive a youthful offender sentence.[43]

At the evidentiary hearing, Ramirez testified that he knew nothing about the ten-year offer from the state until trial counsel told Ramirez that on Ramirez' behalf trial counsel had rejected the offer because trial counsel thought he could get a better deal.[44]  Ramirez claimed that he thought he would receive youthful offender status and no more than six years because he assumed trial counsel would not have turned down the ten-year offer absent the judge's and the state's agreement to youthful offender status.[45]  Ramirez admitted that he knew he might not receive a youthful offender sentence because the court had ordered a pre-sentence investigation.[46]  Ramirez knew that trial counsel intended to put on witnesses for mitigation, which was unnecessary if it was already decided that Ramirez would receive a youthful offender sentence.[47]

---

[41]  *See* docket 10, Exh. 21, pp. 93-94.

[42]  *See* docket 10, Exh. 21, p. 98.

[43]  *See* docket 10, Exh. 21, p. 98.

[44]  *See* docket 10, Exh. 21, pp. 19, 28.

[45]  *See* docket 10, Exh. 21, p. 20.

[46]  *See* docket 10, Exh. 21, p. 45.

[47]  *See* docket 10, Exh. 21, pp. 43-45.

The transcripts establish that the prosecution never offered – and trial counsel never conveyed to Ramirez – a firm offer of ten years. Therefore, the *Strickland* prejudice prong remains unsatisfied. Additionally, no plea could have been entered without extinguishing the outstanding offer, again leaving *Strickland* unsatisfied. The trial court credited trial counsel's testimony that trial counsel conveyed to Ramirez only the potential for a plea of ten years (after all, this state attorney makes no offer but only receives offers) and that Ramirez pre-emptively rejected any notion of agreeing to serve a ten-year sentence. Instead, Ramirez wanted trial counsel to try to obtain a youthful offender sentence of no more than six years. While trial counsel advised Ramirez that it was possible to receive a youthful offender sentence of six years or less, trial counsel did not lead Ramirez to believe that a youthful offender sentence was likely. The trial court's finding trial counsel's testimony more credible than the petitioner's commands a presumption of correctness. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 & 1320 (11th Cir. 1998).

**Open Plea**

After informing Ramirez that the maximum on each count of the lewd and lascivious was fifteen years in prison, the judge asked him, "[I]s it your intention today to enter this no-contest plea understanding that I don't know what your sentence might be and you don't know what your sentence might be at this time?"[48] He answered, "Yes."[49]

---

[48] *See* docket 10, Exh. 7, p. 13.

[49] *See* docket 10, Exh. 7, p. 14.

The judge read all of the rights Ramirez would be giving up by entering the plea, including asking him whether he was satisfied with the representation of his counsel, to which he responded, "Yes."[50] When asked if any promises regarding the sentence had been made, Ramirez answered, "No."[51] The judge informed him that the maximum sentence on the lewd and lascivious batteries was thirty years in prison and the maximum on the violations of probation, burglary and grand theft, was ten years in prison.[52]

Ramirez admitted that the judge informed him that the maximum sentence was forty years in total.[53] He also admitted remembering that the prosecution informed the judge that the state was seeking the maximum.[54] Ramirez stated that he did not question the judge about a youthful offender departure because he thought the judge was reciting a litany of "legal procedure."[55] He thought the witnesses had to be presented in mitigation so that he would not receive all six years in prison as a youthful offender.

Ramirez testified that, when he responded affirmatively to the judge's questions about whether Ramirez understood that his sentence was not yet determined, Ramirez thought that the sentence would be some combination of incarceration and house arrest

---

[50] *See* docket 10, Exh. 7, pp. 14-18.

[51] *See* docket 10, Exh. 7, p. 17.

[52] *See* docket 10, Exh. 7, p. 21. He scored to a guidelines low end of 15.9 years in prison, with the high end at thirty years. *See* docket 10, Exh. 7, p. 22; Exh. 8, p. 40 & 76.

[53] *See* docket 10, Exh. 21, pp. 39-40.

[54] *See* docket 10, Exh. 21, p. 39.

[55] *See* docket 10, Exh. 21, pp. 39-40.

within a six-year time limit. In other words, Ramirez claims his testimony meant that he did not know what sentence he would receive inside a six-year youthful offender sentence.[56] Therefore, according to Ramirez, when the prosecutor announced that the ten-year plea was "off the table," Ramirez did not worry because trial counsel told him the ten-year offer would still be valid if the judge did not sentence him as a youthful offender.[57] Ramirez testified he would have accepted a ten-year offer had trial counsel explained the difference between pleading to ten years versus pleading open to the court.[58] On the other hand, Ramirez also testified that he never had the opportunity to reject the ten-year offer because his counsel told him it had already been rejected on his behalf.

Trial counsel testified that he fully explained the risks involved in entering an open plea.[59] Trial counsel states that he made it clear to Ramirez that the ten-year sentence was no longer valid if he entered an open plea.[60] Ramirez told trial counsel that he unequivocally wanted to reject the ten-year sentence and to plead open to the court, knowing the risk involved in taking a chance for a youthful offender sentence.[61]

---

[56] *See* docket 10, Exh. 21, pp. 24-27.

[57] *See* docket 10, Exh. 21, pp. 35-36.

[58] *See* docket 10, Exh. 21, pp. 19, 28-29.

[59] *See* docket 10, Exh. 21, pp. 93-96.

[60] *See* docket 10, Exh. 21, p. 98.

[61] *See* docket 10, Exh. 21, pp. 100, 108 & 112.

Trial counsel testified that he explained what "pleading open" meant, and the court questioned Ramirez to confirm that Ramirez understood the consequences and risk of pleading open. The trial court credited trial counsel's testimony (1) that he discussed with Ramirez a potential ten-year sentence, which Ramirez rejected before the plea hearing began and (2) that no six-year youthful offender sentence was ever promised. Because no plea offer for ten years existed at the time Ramirez entered his open plea, as Ramirez admitted he knew, no lower sentence would have resulted had he not entered the open plea. Aptly describing Ramirez' plight, the trial court observed, "[Pleading open is] a risk, a chance, a wager[62]

The petition for writ of habeas corpus (Dkt. 1) is denied. The clerk is directed to enter judgment in favor of the respondent, to terminate any pending motion, and close the case.

The court declines to issue a certificate of appealability because Ramirez has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the court authorize Ramirez to proceed on appeal *in forma pauperis* because such an appeal would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

ORDERED in Tampa, Florida, on October 29, 2013.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[62] *See* docket 10, Exh. 21, p. 136.